## Waliyuddin v. University of Pennsylvania Health System

C.P. of Philadelphia County, January Term 2003, no. 0763.

*Frank A. Rothermel,* for plaintiffs.
*Elaine M. Ross,* for defendant University of Pennsylvania.
*Gary M. Samms,* for defendant Maron.

SYLVESTER, *J.,* March 22, 2006—

## I. FACTS AND PROCEDURAL HISTORY

The factual time line in this case reveals that on November 21, 2000, Constance Collier suffered a stroke

and was hospitalized at the Hospital of the University of Pennsylvania for treatment until her discharge on December 7, 2000.

Following her discharge from the Hospital of the University of Pennsylvania on December 7, 2000, Ms. Collier was transferred for rehabilitation therapy to Presbyterian Medical Center Skilled Nursing Facility and/or Presbyterian Center for Continuing Care. On December 13, 2000, Ms. Collier experienced a setback in her condition and was re-admitted to the Hospital of the University of Pennsylvania, where she was an inpatient for approximately one week. On December 20, 2000, Ms. Collier returned to Presbyterian Medical Center Skilled Nursing Facility and/or Presbyterian Center for Continuing Care where she remained until January 9, 2001. (See plaintiffs' first amended complaint.)

On January 9, 2001, Ms. Collier was transferred to Presbyterian Hospital with complaints of spiked temperature and shortness of breath, where she remained for one month. On February 6, 2001, Ms. Collier was transferred to St. Agnes Burn Center for treatment of alleged medication-induced Stevens-Johnson syndrome that had been developing during her December 20, 2000-January 9, 2001 admission at Presbyterian Medical Center Skilled Nursing Facility and/or Presbyterian Center for Continuing Care and her January 9, 2001-February 6, 2001 admission at Presbyterian Medical Center. Her condition evolved into toxic epidermal necrolysis syndrome. Ms. Collier was discharged from St. Agnes Medical Center on March 14, 2001.

Ms. Collier died on May 5, 2001 from complications secondary to the toxic epidermal necrolysis.

A medical malpractice complaint was filed on behalf of the estate of Constance Collier against multiple defendants on May 27, 2003. The crux of the claim was that Constance Collier had been given Dilantin, for the first time ever, after her stroke in an effort to stabilize her condition. Plaintiffs' counsel contended in his opening statement that defendant doctor and attending physician Jeffrey Maron failed to stop the Dilantin after the patient developed an allergic reaction and a visible rash. Counsel contended that Dr. Maron failed to diagnose her Dilantin hypersensitivity reaction and this led to her fatal condition of toxic epidermal necrolysis, or Stevens-Johnson Syndrome. (See Notes of Testimony (N.T.), 4/4/05, pp. 18-21.) A two-week jury trial began on March 31, 2005. Closing arguments were delivered on April 14, 2005. The trial court then charged the jury and dismissed them for the evening. On April 14, 2005 the trial court also granted a directed verdict in favor of defendants, University of Pennsylvania Health System, Presbyterian Medical Center of Philadelphia, Trustees of the University of Pennsylvania, Presbyterian Medical Center Skilled Nursing Facility, and Presbyterian Center for Continuing Care.

On April 15, 2005 a unanimous jury of 12 returned a verdict against Dr. Maron in the total amount of $1,000,000. The jury allotted $250,000 for wrongful death and $750,000 for the survival action. The jury found that he was not an ostensible agent of defendant Presbyterian Hospital. Defendant Dr. Maron appealed.

## II. ANALYSIS

The trial court has carefully reviewed this matter. Defendant's concise statement of matters complained of on appeal is neither concise nor well-drafted. Defendant's complaints about the testimony of plaintiffs' experts, Wendy Ziecheck M.D. and Dr. Stanley Yankovitz, are utterly without merit and will not be addressed. Their testimony speaks for itself. (See N.T. 4/6/05, pp. 4-134; N.T. 4/7/05, pp. 6-201; N.T. 4/8/05, pp. 4-90.) The jury was free to give their expert testimony whatever weight it deemed appropriate. The trial court did not commit reversible error by failing to strike any of their testimony.

Defendant's main contention of race discrimination demands the trial court's attention. The defendant's allegation that the court committed reversible error by allowing plaintiff's counsel the opportunity to use his four peremptory challenges to strike jurors based upon race is most serious. Defendant makes the specious claim that jury selection was tainted. He claims plaintiff failed to give any neutral justification for striking four Caucasian jurors. He claims the trial court permitted race-based exclusion of potential jurors. Defendant is woefully mistaken.

The Notes of Testimony of March 31, 2005 reveal that, at the onset of trial, counsel for defendants complained that the plaintiff used four strikes to strike four Caucasian potential jurors. (N.T. 3/31/05, p. 4.) Furthermore, counsel "point(ed) out for the record that Doctor Maron is a white physician and the plaintiffs are a black family." (N.T. 3/31/05, p. 5.)

This very serious charge was addressed immediately by the trial court. The court had plaintiffs' counsel proffer their race-neutral explanations out of the presence of the jury. (N.T. 3/31/05, p. 9.) The court carefully considered the occupations and relationships articulated by plaintiffs' counsel and discovered:

(1) Juror Wolstenholme's wife was a hospital clerk at Thomas Jefferson University Hospital, and two major defense witnesses were from there (N.T. pp. 11-12);

(2) Juror Miller was a Penn State student who cared for Alzheimer patients, and Constance Collier was a stroke victim (N.T. pp. 14-16);

(3) Juror Berkemeyer was an assistant underwriter for an insurance company (N.T. pp. 17-18); and

(4) Juror Stearns had 10 or 12 years experience in hospital administration. (N.T. 3/31/05, pp. 19-20.)

The trial court scrupulously reviewed, prior to trial, counsel's reasons and options for striking potential jurors 17, 4, 34 and 33. The court was satisfied that a plethora of race-neutral reasons existed for plaintiffs' counsel's peremptory challenges of these four potential jurors. (N.T. 3/31/05, p. 30.)

### III. CONCLUSION

In sum, an attentive and dedicated jury worked for two weeks. They heard graphic testimony of how an elderly woman suffered and died due to an ongoing allergic reaction to Dilantin. They diligently deliberated. They found Dr. Maron negligent. They made an award to the family of Constance Collier. Their decision should stand.